JAMES M. SEYMOUR, JR.,

*v.*

REBECCA GOODWIN, executrix, &c., et al.

[Filed November 2d, 1904.]

1. Until a claim, on which suit at law is pending and which is disputed, is established against an estate, a court of equity will not enforce the claim against a fund alleged to be held by the executrix in trust for the payment of debts.

2. A decree of a surrogate barring claims against a decedent's estate cannot be attacked collaterally.

3. A decree of a surrogate barring claims against decedent's estate having been pleaded in defence of an action at law on a claim against the estate, the creditor may maintain a suit in equity to restrain setting up or proving such defence by showing that the claim had been presented and the verification waived before the decree was made.

---

On demurrer to bill.

*Mr. Cortlandt Parker,* for the defendants.

*Mr. Louis A. Ziegler* and *Mr. Howard Hayes,* for the complainant.

EMERY, V. C.

Complainant has brought suit at law against the defendant Rebecca Goodwin, as executrix of her husband, Hannibal Goodwin, deceased, upon a claim of $2,463 for goods sold and delivered to the testator in his lifetime. In this suit, the defendant, besides the general issue and *plene administravit,* has pleaded two special pleas, one of which is that the claim of the plaintiff was not exhibited under oath, as required by the order taken to limit creditors, which was duly published, and that by a final decree, made by the surrogate, October 17th, 1901, all claims not brought in within the time limited by the order

(nine months from its date, January 17th, 1901) were barred from any action thereon against the executrix. The complainant, replying issuably to all of the pleas except the special plea of bar by the decree of the surrogate, thereupon filed this bill to enjoin the defendant interposing this decree as a bar to the suit, claiming that by reason of the facts alleged in the bill, relating to the presentation of the claim, the defendant is in equity estopped from setting up the decree. The transactions and communications between complainant and his attorney and Mr. Cortlandt Parker, the counsel and legal adviser of the executrix, are mainly relied on as creating the alleged estoppel, and Mr. Parker is made a co-defendant to the bill. The bill also alleges that the only assets of the estate of the testator were the capital stock of a corporation called the Goodwin Film and Camera Company, issued by the company to the testator for valuable patent rights owned by him; that he bequeathed and devised all his estate to his widow, whom he appointed executrix, and that she placed in the hands of Mr. Parker a large amount of this stock in trust for herself and for the purpose of paying the creditors of her husband; that a portion of this stock has been assigned by Mr. Parker to Mrs. Goodwin to use the same in making settlement with the creditors of the testator. It is further alleged that these shares are now held in trust by the two defendants for the benefit of the complainant and other creditors of the testator, but that they both now deny the trust and claim that the stock is not held in trust to pay complainant and the other creditors of Hannibal Goodwin. The bill is filed by the complainant for the benefit of himself and all other creditors of the testator and against Mrs. Goodwin, both individually and as executrix, and against Mr. Parker. It prays answer from both, discovery of the assets of the estate, and the trusts upon which they are held, a declaration that the stock is held in trust by the defendants, or one of them, for complainant; that it may be sold under the decree of this court, and the claim of complainant established by this court, and decreed to be paid, and that the estate of the decedent may be administered under the direction of this court.

The defendants demur jointly to the whole bill, assigning

several causes of demurrer, two of them—the fourth and fifth—denying the right under the facts set up in the bill to an injunction against setting up the bar of the decree, the others denying either the jurisdiction of the court for any purpose or the right of the complainant to any part of the other relief specially prayed by the bill.

The complainant's debt is not established by judgment or admitted by the executrix, and a suit at law is now pending to establish it. No circumstances are shown in the bill to justify the removal of the settlement of this dispute to this court, or to warrant this court in interfering with the settlement of the estate in the ordinary manner. *Frey* v. *Demarest, 16 N. J. Eq.* (*1 C. E. Gr.*) *236, 239* (*Chancellor Green, 1863*) ; *Rutherford* v. *Alya, 54 N. J. Eq.* (*9 Dick.*) *411* (*Court of Errors and Appeals, 1896*) ; *Loehnberg* v. *Loehnberg, 63 N. J. Eq.* (*18 Dick.*) *496,* and cases cited (at *p. 498*).

Until the complainant's debt or claim is established against the executrix in the forum which complainant has chosen for that purpose, this court cannot make any declaration or decree against the defendant as executrix, and until the complainant has exhausted his remedy against the estate in the hands of the executrix no relief can be given against the defendant as legatee or under the alleged trust agreement. The only equitable jurisdiction exercisable under this bill, therefore, is that jurisdiction invoked in connection with the suit at law, and for the purpose of preventing the defendant from setting up the decree barring claims as a defence. Under the statute (*Orphans Court Revision, P. L. of 1898 p. 740* § *70*) this decree is made solely upon proof of the setting up and advertising of the notices to creditors, as directed by the rule to bar, the surrogate or court apparently considering no other question and making the decree on the *ex parte* application of the executor or administrator without notice to any creditor. The decree once made, becomes by the statute a bar against any creditor who neglected to bring in his claim within the time limited, and the decree is conclusive and cannot be attacked collaterally. *Ryan* v. *Flanagan, Administratrix, 38 N. J. Law* (*9 Vr.*) *161, 164* (*Supreme Court, 1875*). In a court of law, defendant could not, therefore, be

estopped from setting up the decree, or be held to have waived the presentation of the claim under oath.

The provision of the statute, requiring the claims to be presented under oath, was intended primarily for the protection of the executor or administrator, and where the estate was solvent the executor could, if he chose, waive this provision and recognize or pay any claim which he knew, or became satisfied was just, without requiring the oath of the creditor. *Kinnan* v. *Wight, 39 N. J. Eq. (12 Stew.) 501, 504 (Chancellor Runyon, 1885)*. This right is now expressly recognized by the statutes, which allow the executors or administrators to be allowed for payments of claims not presented under oath, if proved to be just claims. *Orphans Court Revision, P. L. of 1898 p. 739 § 68; First National Bank v. Thompson, 61 N. J. Eq. (16 Dick.) 188, 206 (Vice-Chancellor Stevens, 1900)*. Statutory provisions, for the benefit of private or personal rights and not affecting public rights or policy, may in general be waived, and this is specially true as to statutory provisions relating to formal procedure. *Endl. Stat. § 445*. The waiver of the oath to the claim by the executrix, who was also the sole legatee, and her acceptance of the claim as if sworn to, did not affect, and it is not claimed to affect, the right to have the claim established by suit, and the substantial question in the case is whether, by the failure to present the claim under oath, the complainant is barred by the decree from establishing his claim by proving the same in the action against the executor. It seems clear to me that if, in this case, the oath to the claim has been waived by the executrix, or she is equitably estopped from setting up that the oath was not made, she should be enjoined from interposing the decree as a bar to a suit upon the claim. The facts disclosed in the bill, from which this waiver or estoppel is alleged to arise, are substantially the following: Complainant furnished and supplied to testator, before his death and from May to September, 1900, work, labor and materials to the amount of $2,463, to be paid for in cash. Testator died in December, 1900, having devised and bequeathed all his estate, real and personal, to his widow, the defendant Rebecca Goodwin, who was appointed sole executrix and qualified as

such, and who assumed the administration of the estate; the defendant Mr. Parker had been Mr. Goodwin's counsel and business adviser during his lifetime, "and after his death became the attorney and counsel for the executrix, and also acted as her business agent, taking charge of the administration of the estate of the deceased," being also a creditor of Mr. Goodwin for about $6,000; in February, 1901, complainant saw the executrix and asked her if his bill would be paid, and the executrix then stated to complainant that she had nothing to say in regard to it, as everything was in the hands of Mr. Parker; complainant then called upon Mr. Parker and asked him to pay the bill, and he then said to complainant that he would not pay the bill, and complainant must get it from the estate. Complainant then employed his attorney, Mr. Ziegler, to collect the claim. Mr. Ziegler, in the spring of 1901, called on Mr. Parker, as Mrs. Goodwin's attorney, to arrange for a settlement of the claim, and Mr. Parker then stated to Mr. Ziegler that he and Mrs. Goodwin knew all about complainant's claim; that it was all right and would be protected; and that nothing could be done, as there was no money in the estate; but that steps were being taken to realize on the patents of the deceased. Complainant afterwards gave to Mr. Ziegler an itemized statement of his claim with instructions to present it to the executrix. Mr. Ziegler prepared an affidavit, verifying the claim, as required by law, which complainant swore to, and left with the claim in Mr. Ziegler's hands. Mr. Ziegler afterwards, and before October, 1901, presented the itemized claim to Mr. Parker, who then said to him that the claim was all right and would be paid, but that there was no money in the estate and the complainant must be patient, awaiting the disposal of the patents; that complainant would be taken care of, but that nothing could be done. The bill states in one place that Mr. Ziegler may have neglected to deliver the affidavit with the claim, and may not have presented any affidavit verifying the claim, and that this neglect and lack of care by Mr. Ziegler, if it occurred, arose from his relying on the assertion of Mr. Parker that the claim was all right and would be taken care of. In another part of the bill referring to the suit at law, complainant says,

however, that he cannot with safety plead that he has duly exhibited his claim within the time required by law, because the claim was not (on account of the assurances of Mr. Parker) duly verified by complainant's affidavit. In reference to the presentation of complainant's claim to Mr. Parker, the bill further discloses that in September, 1901, complainant himself spoke to a Mr. Bolmer, who was connected with the Goodwin company, and told him that he expected to bring suit for his claim if it was not paid, and that after this interview complainant received the following letter from Mr. Parker, written more than a month before the expiration of the time to prove claims:

"SEPTEMBER 12TH, 1901.

"*James M. Seymour, Jr., Esq.:*

"DEAR SIR—Mr. Bolmer tells me that he met you the other day, and that you broached the subject of the bill you have presented to me for work and materials furnished the late Mr. Goodwin, with apparently some anxiety about it.

"I don't know whether he told you that an arrangement has been made with parties in New York, long engaged successfully in photographic business, who have the management now of the Goodwin Co. and Goodwin patent, and that it is thought by us all that the very best thing for the doing well by the patent has been done.

"A part of the arrangement is that the agreement between you and Mr. Goodwin should be carried out—which I understand to be that the stock in the Goodwin Film and Camera Co., to the amount of your bill, will be given to you and taken in satisfaction thereof, the same arrangement made for and by myself for the like service. Absence on vacation of myself and other parties concerned has delayed making out certificates of stock, &c. In a few days one, as above, will be ready for you.

"Very truly yours,

"CORTLANDT PARKER."

To this letter the complainant replied under the same date, acknowledging receipt of Mr. Parker's letter, and stating that he was not aware of any arrangement to receive either cash or stock for the materials furnished, but that he and not Mr. Goodwin had the option as to receiving stock, and that he needed money and did not want stock, and also informing Mr. Parker that he had sent Mr. Parker's letter and a copy of his own letter in reply to Mr. Ziegler, who would call on Mr. Parker. Subsequently, and on October 17th, 1901, the decree

barring creditors was taken, apparently without further interviews or communications.

Subsequent to the entry of the decree, and before the commencement of the suit, interviews and communications took place between Mr. Ziegler and Mr. Parker in reference to settling the claim, and in one of the letters, dated May 23d, 1902, Schedule E, Mr. Parker tendered Mr. Ziegler, as representing complainant, stock of the company of the par value of $5,000 in discharge of the claim made by the complainant through Mr. Ziegler against Mrs. Goodwin, executrix, and then stated Mrs. Goodwin's understanding that the work and materials were furnished to the corporation and were to be paid for by fifty shares of stock and not by money. The facts disclosed in reference to the interview between Mr. Ziegler and Mr. Parker at the time of the presentation of the claim, do not, in my judgment, raise any estoppel against the assertion of the executrix that the claim was not verified. These were merely, according to the bill, assurances that the bill was all right, but general assertions of this character, without special reference to the question of whether the claim was verified or not, have not been held sufficient to dispense with the necessity of verification or to prevent the executor from setting up the want of the oath (*Lewis* v. *Champion, 40 N. J. Eq. (13 Stew.) 59, 62, Chancellor Runyon*), and it appears besides that neither complainant nor his attorney had up to the time of that interview relied on the assurances of this character as relieving them from the necessity of verifying the claim. In the spring of 1901 Mr. Parker had, according to the bill, told Mr. Ziegler that he and Mrs. Goodwin knew all about complainant's claim and that it was all right and would be protected, but subsequent to this conversation the itemized bill, and the affidavit verifying it, were made out for presentation.

The question in the case, in my judgment, is whether the letter written by Mr. Parker to the complainant himself in reference to the claim on September 12th, 1901, more than a month before the taking of the decree, and while there was still abundant time to remedy the defect of verification if it was insisted on, must not be taken as a waiver of this verifica-

tion. Complainant had, according to the bill, duly verified his claim and delivered the claim with the verification to his attorney for presentation to the executrix. The attorney had delivered the claim (without verification) to Mr. Parker. Mr. Parker wrote complainant direct on September 12th in reference to the claim, calling it "the bill you have presented to me for work and materials furnished the late Mr. Goodwin." He then refers to the agreement between complainant and Mr. Goodwin, as he understood it, that stock in the company to the amount of complainant's bill would be given to him in satisfaction, and says that in a few days the certificate of stock would be ready for complainant. This letter expressly recognized the receipt of the bill as "presented" and the correctness of the amount of the bill, and while the executrix is not estopped from subsequently contesting the correctness of the bill, it did amount, under the circumstances shown, to a waiver of the verification. On receipt of the claim not verified, the attorney acting for the executrix was perhaps not then bound to say anything about the verification, or to say anything afterwards at all to complainant or his attorney upon the subject of the claim or its presentation, and mere silence would not subsequently have given rise to any waiver of the defect. But Mr. Parker undertook afterwards, and before the expiration of the time for duly presenting claims, to write the complainant in reference to the presentation of the claim and to offer a settlement of the claim on the basis of the amount presented. This letter recognized the claim as presented, that is, I take it, as "duly presented," and offered a settlement in stock for about twice the amount of the claim. The letter notified complainant that the claim was not to be settled in cash, but did not object to the lack of verification or to the amount of the claim. I think that if this formal objection of lack of verification was intended to be insisted on, it should have been given distinctly by this letter, and while there was still time to remedy it, and that not having been then given, it must be considered waived. Complainant himself having verified his claim and delivered it to his attorney, had no reason to suppose that the verification had not been delivered with the claim, and in his reply to Mr.

Parker he states that he has sent Mr. Parker's letter and his own to his attorney. The waiver relied on in this case was not made by the executrix personally, but was made by Mr. Parker on her behalf and as acting for her, and the question as to his authority in this behalf is raised by the demurrer. As bearing upon this point the bill alleges that Mr. Parker acted as attorney and counsel of the executrix and also as her business agent, taking charge of the administration of the estate. The letter of September 12th recognizes the presentation of the bill and offers on behalf of the executrix herself a settlement, based on the amount of the claim as presented to Mr. Parker. I think these allegations sufficiently show Mr. Parker's authority to accept on Mrs. Goodwin's behalf the claim as presented to him, without verification, and to make on her behalf the waiver of verification arising from the writing of this letter.

The statutes providing short limitations for actions on rejected claims and for barring actions on claims not duly presented are, generally, if not universally, considered penal in character, and cannot be invoked on behalf of the personal representative to bar suit on the claim where his action toward the creditors in relation to the rejection or presentation of the claim has been ambiguous or equivocal. *2 Woer. Admn. \*812,* citing, *inter alia, Hoyt* v. *Bonnett, 50 N. Y. 538, 542.*

In the absence of the statute providing that the decree should bar creditors, there would seem to be no reason why the waiver could not be set up and enforced in the action at law, as in actions on insurance policies, where formal provisions as to proofs of loss have been waived, but the statute having provided for the decree barring creditors and declared its effect, the only method of enforcing waiver of formal proofs in cases like the present is by holding the representative estopped from setting up or having the benefit of the decree. The decree barring creditors having been in fact set up by the plea, the defendant should be enjoined from proving the decree in the suit at law. I will advise an order overruling the demurrer.